## BELLOWS *v.* CRANE LUMBER CO.

1. SAW LOGS—CONVERSION—EVIDENCE.
   Where plaintiffs allege that defendant designedly stopped their logs and took them into its possession, converting them, testimony of defendant's employés that they were instructed not to saw plaintiffs' logs that came into the mill, but to throw them out, and that these instructions were followed so far as they could see the marks, is competent.

2. SAME—INSTRUCTIONS—DEGREE OF PROOF.
   Plaintiffs and defendant each owned a sawmill, receiving their logs by the same stream. Near defendant's mill was a boom, where its logs were sorted out and turned into a canal leading to its mill, and plaintiffs' logs were let through to pass down the stream. Plaintiffs had a large number of logs in the stream above the boom, which could not be driven because of low water, and had careful counts of such logs made. Thereafter defendant opened a dam higher up the stream, and brought down plaintiffs' logs with its own; and it was plaintiffs' contention that defendant made no attempt to assort the logs, but turned those belonging to plaintiffs into its canal, where most of them disappeared. In an action for the conversion, plaintiffs introduced testimony in support of their claim, while defendant offered testimony to the contrary, and showed by its employés that only a few of plaintiffs' logs were sawed, of which an account was kept. The court charged that the only positive evidence as to the amount of logs converted was that of defendant itself, and that, before the jury could find the conversion of more, they must find some evidence on which to base it, and could not guess at a verdict; also that plaintiffs had not shown a conversion unless they had shown that the logs were "sawed into lumber and held by the defendant." *Held,* that such instructions laid down too strict a rule, and were erroneous.

Error to Benzie; Chittenden, J. Submitted January 29, 1902. Decided March 4, 1902.

Trover by Elwin Bellows and Adelbert Bellows, copartners as Bellows Brothers, against the Crane Lumber

Company.   From a judgment for only a portion of their claim, plaintiffs bring error.   Reversed.

*George Whitbeck* and *Thomas Smurthwaite*, for appellants.

*D. G. F. Warner*, for appellee.

HOOKER, C. J.   The Betsie river empties into Betsie Lake from the south.   Each party owns a sawmill upon the lake; the plaintiffs' mill being upon the north side, while that of the defendant is upon the south side.   Both parties run logs down Betsie river.   There are two sorting places.   The general sorting gap is at the mouth of the river.   The other is known as "Crane's Sorting Gap," which is about 20 rods above the mouth of the river.   It is at the entrance of an artificial canal leading down to the defendant's mill.   It is the plaintiffs' claim, and their proof tended to show, that after October 1, 1899, they had from six to eight hundred thousand feet of logs scattered along the river below Lewis' bar, and that substantially all of the logs upon the river below that point belonged to them.   They sent some men up to bring them down, but they were obliged to abandon the project.   These men estimated the logs, and the plaintiffs caused them to be counted at that time.   On October 26, 1899, the defendant sent some men farther up the river to drive down some logs, which they were able to do by means of floods made by opening defendant's dam at Crystal Lake.   No notice was given to the plaintiffs, but they heard of it, and went up the river to see about it, and found that it was true, and that defendant had obstructed the river below Crane's sorting gap, and was turning its logs which came down, including most of the plaintiffs' logs, into the artificial canal belonging to it; having failed to provide for adequate inspection and assorting at the gap.   The defendant offered testimony to show that it did assort the logs, and that it put substantially all of the plaintiffs' logs down the channel of the river, though an occasional log was missed,

and that most of these were dumped upon their dock or into the lake when found at the mill, according to a local custom, where the plaintiffs could get them, and did get some of them. A few were sawed, and account kept, according to a local custom; and a judgment for about $29 was rendered for them against the defendant, from which the plaintiffs have appealed.

The plaintiffs have not sued for treble damages, under section 5099, 2 Comp. Laws, although they assert in their brief that defendant was guilty of a misdemeanor, under section 5093; but they insist that the obstruction of the river and failure to assort these logs show a willful disregard of law and appropriation of their property amounting to a conversion, whether the logs were actually sawed and used or sold by the defendant or not.

Among other assignments of error, plaintiffs complain of the testimony of defendant's employés that they were instructed not to saw plaintiffs' logs which came into the mill, but to throw them out, and that these instructions were carried out so far as they could see the marks. In view of plaintiffs' claim that the defendant designedly stopped these logs and took them into its possession, this testimony would seem to be competent.

Complaint is made that the court limited the right of recovery to logs which were sawed into lumber and held by the defendant, and of his instruction that—

" The only positive evidence introduced as to the exact amount of logs converted by the defendant is that introduced by the defendant itself, and this testimony shows but 4,195 feet were converted, and, before you can find that defendant got more than that amount, you must first find some evidence on which to base it; and, as I have before stated, you must not guess at a verdict, but must find it from the evidence, and that by a preponderance of the evidence given you in this case."

Without intending to indicate an opinion regarding the merits of the controversy, we may say that there was evidence tending to show that the defendant drove into its canal and pond a number of hundred thousand feet of the

plaintiffs' logs. Its duty was to assort these logs; and while plaintiffs, if they had notice, might have sent men to assort, and perhaps should have done so, their failure did not confer the right upon defendant to omit its duty to assort, and turn down the canal the large quantity of logs belonging to the plaintiffs. If the plaintiffs' claims are true, and the great bulk of logs belonging to the plaintiffs disappeared from sight after being thus taken into the canal, there is an opportunity for inferences of conversion, although they were unable to give positive testimony as to the quantity or disposition of the logs. Again, it was laying down too strict a rule to say that plaintiffs had not shown a conversion unless they had shown that logs were "sawed into lumber and held by the defendant." If they proved facts which convinced the jury that defendant did not try to assort, but received a great quantity of logs belonging to them, and not only did not return them, or give notice of their whereabouts, but, on the contrary, denied receiving them, a conversion might be inferred.

It is not improbable that a just verdict has been reached in this case, but we are of the opinion that the jury must have understood that they could render a verdict for only so many of the logs as had been shown to have been sawed and appropriated, and that they were precluded from inferring a conversion from defendant's conduct. Manifestly, the plaintiffs could not by direct evidence show what was done with their logs; but if it appeared that the defendant intentionally took possession of them, and denied having the major part of them, or refused or failed to show what disposition was made of them, the inference of a conversion would be strong.

The judgment is reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.